# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF RHODE ISLAND


ZVI CONSTRUCTION CO., LLC
            Plaintiff,

v.                                          C.A. No. 09-547-ML

THE HARTFORD INSURANCE COMPANY
and H. CARR & SONS, INC.,
            Defendants.


H. CARR & SONS, INC.,
            Third-Party Plaintiff,

v.

WILLIS OF NEW YORK, INC., f/k/a WILLIS
CONSTRUCTION SERVICES
CORPORATION OF CONNECTICUT,
            Third-Party Defendant.


## MEMORANDUM AND ORDER

The plaintiff in this case, ZVI Construction Co., LLC ("ZVI")[1], a Massachusetts construction management company, seeks a declaration (Count I of ZVI's complaint) that ZVI is an additional insured under a liability insurance policy (the "Policy") issued by defendant The Hartford Insurance Company ("The Hartford") to

---

[1]
    Although ZVI is the named plaintiff in this action, it is undisputed that Travelers Insurance Company ("Travelers"), ZVI's insurer, is conducting this litigation in the name of ZVI. H. Carr SOF 24.

1

defendant H. Carr & Sons, Inc. ("H. Carr"), a Rhode Island general service interior contractor, with respect to claims brought against ZVI by former H. Carr employee David Siden ("Siden") after Siden was injured on a construction project. In addition, ZVI is asserting claims of Breach of Contract (Count II), Unjust Enrichment (Count III), and Detrimental Reliance (Count IV) against H. Carr. ZVI seeks damages allegedly caused by The Hartford's refusal to defend and indemnify ZVI in connection with Siden's claim or, in the alternative, ZVI seeks damages against H. Carr based on H. Carr's alleged breach of its agreement with ZVI to obtain insurance for the benefit of ZVI which, ZVI asserts, would have protected ZVI against Siden's claim.

H. Carr, which specifically denies that it agreed to obtain insurance coverage for ZVI, has asserted a cross-claim against The Hartford. In its cross-claim, H. Carr states that, if the Court finds that H. Carr was obligated to procure insurance coverage for ZVI, "then the Hartford is responsible for the damages alleged by ZVI." H. Carr Answer and Cross-Claim ¶ 8.

In addition, H. Carr has recently filed a three-count complaint against Willis of New York, Inc. f/k/a Willis Construction Services Corporation of Connecticut ("Willis"), an authorized agent of The Hartford and, at the time in question, H.

Carr's insurance broker.[2] H. Carr's allegations against Willis include: Count I - Breach of Contract, Count II - Negligent Misrepresentation, and Count III - Negligence. In the event ZVI prevails in its claims against H. Carr, H. Carr seeks a judgment against Willis for all sums that are found due ZVI from H. Carr, plus interest, costs and attorneys' fees. From the submissions presented to this Court, it is evident that the parties have engaged in extensive discovery.

The case is now before the Court (1) on cross-motions for summary judgment by ZVI, The Hartford, and H. Carr, with respect to ZVI's complaint, and (2) on cross-motions for summary judgment by H. Carr and Willis with respect to H. Carr's third party complaint. The Court has had the benefit of extensive briefing by all parties, supplemented by numerous exhibits and deposition transcripts. The parties have submitted a statement of agreed facts ("SOF") with respect to all parties' motions for summary judgment. In addition, each party has submitted an individual statement of undisputed material facts, in response to which several of the parties have filed statements of disputed facts ("SDFs").[3]

---

[2]

It is undisputed that The Hartford is paying for H. Carr's defense against the claims raised in this litigation. SVI SOF 6.

[3]

The Court notes that H. Carr is the only party in this litigation requesting a hearing on its motion for summary judgment. In light of the extensive memoranda and numerous exhibits submitted

## I. Factual Background and Procedural History

In 1999, ZVI was hired by the IMAX Corporation as general contractor to construct the IMAX Theater at the Providence Place Mall in Rhode Island (the "Project"). SOF 1, 2.  ZVI, by an "Invitation to Bid" dated September 24, 1999, invited H. Carr to "bid on the interior construction package for [the Project]." H. Carr SOF 34, Ex. 14.  H. Carr indicated that it would bid on the Project and requested copies of the plans and specifications. Id. According to H. Carr, ZVI provided it with the plans and specifications, but sent no other materials to H. Carr at that time.  H. Carr SOF 35.

On October 25, 1999, H. Carr submitted a bid to ZVI to perform the work for a lump sum of $683,000. H. Carr SOF 37, H. Carr Ex. 15.  On October 28, 1999, representatives of ZVI and H. Carr discussed the work; they agreed that H. Carr would provide additional work; and they increased the price for H. Carr's work to $720,000.  H. Carr SOF 38, H. Carr, Ex. 15.  Subsequently, H. Carr began performing work as a subcontractor for ZVI by installing drywall and soundproofing material for the IMAX theater pursuant to the October 25, 1999 bid. SOF 4, H. Carr SOF 5, 38.

_____

by all parties, the Court deems a hearing unnecessary and will decide the parties' motions on briefs.  See Fed. R. Civ. P. 78 (b); CIA. Petrolera Caribe Inc. v. Arco Caribbean, Inc., 754 F.2d 404, 411 (1st Cir. 1985)(explaining that trial court has "wide latitude" in determining whether oral argument is necessary before rendering summary judgment).

Shortly before January 7, 2000, H. Carr submitted to ZVI a request for payment for work that H. Carr had performed.[4] SOF 8, H. Carr SOF 52. ZVI informed H. Carr that no payment would be issued until H. Carr provided a certificate of insurance. SOF 9. On January 7, 2000, ZVI submitted to H. Carr three copies of a written document entitled "Standard Form of Agreement Between Contractor and Subcontractor" (the "AIA Form"), together with a written document entitled "General Conditions of the Contract for Construction." ZVI SOF 1, ZVI Ex. A. The transmittal letter describes the copies as "Subcontracts" and indicates that they have been submitted "For Signature." Willis SOF 15, Willis Ex. 5. The letter also contains a request to "sign and return all copies to our office for further execution." Willis Ex. 5. It is undisputed that this was the first time ZVI sent any AIA contract form to H. Carr and that the parties did not discuss any of the specific terms in the AIA Form before ZVI sent the form to H. Carr. H. Carr SOF 41, 44.

The AIA Form is a form contractor-subcontractor agreement developed by the American Institute of Architects ("AIA") to delineate the rights and responsibilities of a subcontractor and contractor in connection with a construction project. ZVI Ex. A.

---

[4]
According to Richard Hogan, then project manager for ZVI, this was the first requisition H. Carr made to ZVI for work H. Carr had performed. Hogan Tr. 99:24-100:4 (Dec. 21, 2010).

The AIA Form ZVI sent to H. Carr had been filled in to, *inter alia*, describe the scope of the work H. Carr was to perform on the Project, <u>see</u> Article 8; it specified a Subcontract sum of $720,000 for performance of the scope of work, <u>see</u> Article 10.1; and it provided a schedule and conditions for progress payments by ZVI to H. Carr, <u>see</u> Article 11.2.

Certain provisions of the AIA Form were modified by ZVI, including Article 4.6.1 on indemnification; other provisions had been eliminated in their entirety, including Article 6 on Arbitration. ZVI Ex. A at 4, 5. Article 13.1 required the subcontractor to purchase and maintain liability insurance coverage. The modified provision states that "[s]ubcontractors are restricted from working on-site until a valid original Certificate of Insurance is received . . . The Subcontractor must add the Contractor and the Owner as primary additional insureds." ZVI Ex. A at 9.

It is undisputed that the AIA Form was never signed by the parties. Hartford SOF 2. H. Carr employee James Anderson ("Anderson"), who was responsible for negotiating and signing the AIA Form, refused to sign it because he objected to certain terms contained therein, particularly the amendments made to the indemnification and arbitration provisions, as well as to certain language concerning the scope of work. H. Carr SOF 49, Hartford SOF 3. According to Anderson, he called ZVI to communicate his

objections. Anderson contacted ZVI employee Mellisa Pastore ("Pastore"), and told her that he had a problem with the proposed AIA Form, and asked to speak to someone with authority. Pastore took a message, but Anderson's call was not returned and he did not follow up. H. Carr SOF 50, 51.

On January 7, 2000, Pastore sent a fax to H. Carr employee David Nowak, who performed billing and collections work. SOF 10, H. Carr SOF 58. The fax cover sheet, which is marked "urgent," references "IMAX - Providence Cert. of Ins." SOF Ex. A at 1. Under Notes/Comments, Pastore wrote "Please get to me as soon as possible, so I can mail your check." SOF 10, SOF Ex. A at 1. Attached to the fax cover sheet are pages 9 through 11 from an unidentified agreement that contains, *inter alia,* a provision for "TENANT'S INSURANCE COVERAGE DURING CONSTRUCTION," which requires that the "Tenant" not permit its contractors to commence any work until certain minimum insurance coverage has been obtained for general contractors and subcontractors. SOF Ex. A at 2-4. The final page of Pastore's fax is a partially filled-in form ACORD CERTIFICATE OF LIABILITY INSURANCE. Id. at 5.

On January 10, 2000, H. Carr employee Joseph Siddall ("Siddall") forwarded, also by fax, Pastore's entire fax to Beverly A. Adamick ("Adamick") at Willis, with which H. Carr had a standard broker/client relationship. Although Willis had previously submitted a written proposal to H. Carr to provide

7

insurance services, no formal written contract existed between the parties. Willis SOF 2, H. Carr SDF 1. Willis, an authorized insurance agent for The Hartford, was authorized by The Hartford to issue certificates of insurance on behalf of The Hartford insureds. SOF 13-14, Willis SOF 3, 4. Siddall's fax cover sheet references "Insurance Cert Per Attached (ZVI Construction - IMAX Theatre)" and states: "Bev I need this one to be faxed to me today. Can you call to discuss language." SOF 11, SOF Ex. B at 1.

In response, Adamick sent a letter to ZVI, stating: "Enclosed is the Certificate of Insurance issued on behalf of H. Carr & Sons, Inc. Should you have any questions please feel free to call." SOF 12, SOF Ex. C at 1. Attached to Adamick's letter is a two-page ACORD CERTIFICATE OF LIABILITY INSURANCE (the "Certificate"), which provides, *inter alia*:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

The Certificate lists H. Carr as the insured, The Hartford, Federal Insurance Company, Beacon Mutual Insurance Co., and Hartford Fire Insurance Company as the companies affording coverage, and ZVI as the Certificate holder. With respect to coverage, the Certificate provides:

> THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT,

8

TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

Page 2 of the Certificate provides that "[t]he interest of the ZVI Construction, the Landlord and the Landlord's Constrcution [sic] Manager are included as Additional Insured for all coverages except Workers' Compensation for the project listed above . . . All liability policies are on a primary and non-contributory basis." According to the cover letter, copies were sent to Siddall at H. Carr and the insurance companies listed on the Certificate as affording coverage.    SOF Ex. C at 1.[5]

Once ZVI received the Certificate, it processed payment to H. Carr.  Willis SOF 23.  According to Anderson's testimony at his deposition, he requested that the Certificate of Insurance be issued "[b]ecause I wanted to make sure we got paid."  ZVI SOF 5, ZVI Ex. D, Anderson Depo. Tr. at 36:1.

To perform its work on the Project, ZVI entered into a subcontract with Brand Scaffold Rental and Erection, Inc. ("Brand"), which was to provide a multi-trade scaffold (the "Scaffold") for various subcontractors to use during the

---

[5]

There is nothing to indicate that Willis either requested a copy of any construction agreement to which H. Carr was a party, or that Willis discussed the matter with H. Carr or any other party before issuing the Certificate.

construction.  H. Carr SOF 2. Brand erected the Scaffold and ZVI
was responsible to have a qualified person inspect it daily. H.
Carr SOF 3.  H. Carr employees, along with other subcontractors for
ZVI, used the Scaffold during their work. H. Carr SOF 6.

On March 23, 2000, H. Carr employee Siden was working on top
of the Scaffold when the Scaffold collapsed. Siden was seriously
injured.  SOF ¶¶ 5-7.  Siden and his family filed a civil action in
Rhode Island state court (the "Siden Claim") against Brand, ZVI,
IMAX, the Providence Place Mall, and various other named and
unnamed defendants.[6] SOF 16, SOF Ex. E.  Siden's second amended
complaint alleges, *inter alia*, that (1) Brand was negligent "in
that it failed to properly select and erect the scaffolding, and
further failed to properly inspect or recognize deficient or
defective components and in failing to have a person competent to
perform such duties sign off on said scaffolding thereby creating
a dangerous and unsafe condition," Siden Complaint ¶25; and (2) ZVI
breached its duty to Siden by "negligently supervising, failing to
supervise or improperly supervising various subcontractors and/or
traded contractors and failing to provide a safe work site."  Id.

---

[6]
Siden did not file a claim against H. Carr, his employer.  H.
Carr SOF 11. It is undisputed that Siden collected workers'
compensation benefits for his injuries from H. Carr's worker's
compensation insurer. H. Carr SOF 8.  Pursuant to the exclusivity
provisions of Rhode Island workers compensation laws, an employee
who receives such compensation for a personal injury in the course
of employment waives his common-law rights to sue his employer.  R.
I. Gen. Laws § 28-29-17.  Cianci v. Nationwide Ins. Co., 659 A.2d
662, 668 (R.I. 1995).

at ¶ 32.

On May 14, 2002, Travelers, on behalf of ZVI, its insured, sent a written demand for contractual indemnification to The Hartford. ZVI SOF 2, ZVI Ex. B., Willis SOF 28. The demand letter asserts that ZVI had a contractual relationship with H. Carr. Travelers enclosed a copy of the unsigned AIA Form and referred to the indemnification provision of paragraph 4.6.1. and the insurance provisions in Article 13. ZVI Ex. B at 1. Travelers also enclosed a copy of the Certificate issued by Willis, "which supports the additional insured coverage requirements of [H. Carr] as outlined in the contract" and the CGL [Commercial General Liability] Form of ZVI's Policy with Travelers. Id. at 1-2. Travelers requested a copy of H. Carr's CGL policy issued by The Hartford. According to Travelers, an OSHA [Occupational Safety and Health Administration] investigation into Siden's accident determined that H. Carr had violated numerous safety regulations and was fined more than $60,000. The letter also notes that Reliance, Brand's CGL insurer, was bankrupt. ZVI Ex. A.

The Hartford did not provide a defense or indemnity to ZVI under the H. Carr Policy. SOF 17. According to The Hartford's Rule 30(b)(6) designee, Jacques Georges ("Georges"), ZVI's claim for coverage was denied solely because there was no executed agreement between ZVI and H. Carr, as the AIA Form that ZVI provided to H. Carr was not signed. ZVI SOF 3, ZVI Ex. C, Georges

Depo. Tr. of Jan 3, 2011 at 86:12-22, Willis SOF 30. Georges explained that The Hartford's determination whether H. Carr agreed to provide additional insurance for the benefit of ZVI was based on the conclusion "that there was no written contract, therefore, no additional insured status could be afforded."[7] Georges Depo. Tr. at 16:9-20. Georges also clarified that an agreement to obtain additional insurance had to be executed prior to a bodily injury to prevent a party from claiming coverage for an accident that had already occurred. ZVI SOF 7, Georges Depo. Tr. at 72:17-73:3. Georges acknowledged that he did not ask anyone at H. Carr whether it had agreed to provide additional insurance protection for ZVI. ZVI SOF 9, George Depo. Tr. at 15:9-16:3.

On January 13, 2003, ZVI filed a third-party indemnity claim against H. Carr in the state court action. Willis SOF 32, H. Carr SOF 12 H. Carr Ex.4. H. Carr denied responsibility for the collapse and denied that it had an obligation to indemnify or defend ZVI. H. Carr SOF 12. Specifically, H. Carr "affirmatively assert[ed] that there was no executed and/or signed contract between H. Carr & Sons, Inc. and ZVI Construction Co., and therefore this action is barred." H. Carr Ex. 5.

On October 17, 2008, ZVI's insurance company, Travelers, paid

---

[7]

According to Georges, his understanding is that "a written contract and an agreement is the same." Georges Depo. Tr. 49:24-50:3, ZVI SOF 8.

$1.5 million[8] toward a $3.2 million settlement to settle Siden's claim against ZVI.  SOF 18.  AIG [American International Group, Inc.], on behalf of Brand, paid $1.7 million, the remainder of Siden's claim.  ZVI then dismissed the indemnity claim against H. Carr in lieu of the present action.  H. Carr SOF 15.

On January 21, 2009, ZVI sued H. Carr and The Hartford in the United States District Court for the District of Massachusetts. Willis SOF 34. By letter dated January 30, 2009, The Hartford informed H. Carr that it would participate in the defense of H. Carr subject to a reservation of rights under the CGL Policy it had previously issued to H. Carr.  H. Carr. Ex. C.  After The Hartford filed a motion to dismiss for improper venue or, in the alternative, to transfer the case to the United States District Court for the District of Rhode Island, the case was transferred to this Court with the assent of ZVI.[9]

On March 23, 2009, H. Carr filed, together with its answer to ZVI's complaint, a cross-claim against The Hartford, seeking damages in the event H. Carr should be found obligated to procure insurance coverage for ZVI.  A year later, on March 29, 2010, H.

---

[8]

According to Travelers' claims handler, Travelers determined that the $1.5 million it paid to Siden "was attributable to the negligence of ZVI."  H. Carr SOF 20. ZVI does not dispute that "[t]he $ 1.5 million that ZVI/Travelers paid to Mr. Siden was not attributable to any wrongdoing by H. Carr."  H. Carr SOF ¶¶ 21, 23; ZVI's Response ¶¶ 21, 23 to H. Carr's SOF.

[9]

H. Carr took no position on The Hartford's motion.

Carr filed a third-party complaint against Willis in this Court. Willis SOF 35. H. Carr asserts, *inter alia*, (1) that Willis breached a contract with H. Carr by failing to obtain and communicate accurate information with respect to coverage afforded under the Policy; and (2) that issuance of the Certificate by Willis constituted a misrepresentation. H. Carr's claims against Willis are conditioned upon (as are H. Carr's claims against The Hartford) a determination that H. Carr is liable to ZVI in connection with "additional insured" coverage under the Policy. Following a Rule 16 conference, the parties submitted cross-motions for summary judgment with respect to ZVI's complaint and H. Carr's third party complaint.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." <u>Prescott v. Higgins</u>, 538 F.3d 32, 40 (1st Cir. 2008) (citations omitted). "A fact is material if it has the potential of determining the outcome of the litigation." <u>Id.</u> (quoting <u>Maymi v. Puerto Rico Ports Auth.</u>, 515 F.3d 20, 25 (1st Cir. 2008).

The party seeking summary judgment bears the burden of establishing the lack of a genuine issue of material fact. Merchants Ins. Co. of New Hampshire, Inc. v. U.S. Fidelity and Guar. Co., 143 F.3d 5, 7 (1st Cir. 1998). Once such requisite showing has been made, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in [Rule 56 of the Federal Rules of Civil Procedures] - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The Court, in considering a motion for summary judgment, "read[s] the record in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor." Merchants Ins. Co. of New Hampshire, Inc. v. U.S. Fidelity and Guar. Co., 143 F3d. at 7 (citing Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997)).

"The presence of cross-motions 'neither dilutes nor distorts this standard of review." Scottsdale Ins. Co. v. Torres, 561 F.3d 74, 77 (1st Cir. 2009)(quoting Specialty Nat'l Ins. Co. v. OneBeacon Ins. Co., 486 F.3d 727, 732 (1st Cir. 2007)). Rather, "'[c]ross motions simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed.'" Scottsdale Ins. Co. v. Torres, 561 F.3d at 77 (quoting Littlefield v. Acadia Ins. Co., 392 F.3d 1, 6 (1st Cir. 2004)); Reich v. John Alden Life Ins. Co., 126 F.3d at 6 ("When

deciding cross-motions for summary judgment, the court must consider each motion separately, drawing inferences against each movant in turn.").

### III.   The Motions for Summary Judgment

A.   ZVI's Motion

Generally, ZVI seeks a declaratory judgment establishing that it is covered as an "additional insured" under the Policy issued by The Hartford to H. Carr.[10]  ZVI argues that H. Carr provided the Certificate to ZVI as a "condition precedent" to payment for H. Carr's work on the IMAX project.  Because H. Carr agreed to obtain insurance for ZVI, ZVI is entitled to coverage under the Policy. In the alternative, if the Court determines that ZVI is not entitled to such coverage, ZVI seeks to establish that H. Carr is liable to ZVI for breach of the agreement to provide coverage.

ZVI also asserts that Willis was acting as an agent when it issued the Certificate representing that ZVI was included under the Policy and that, therefore, The Hartford is precluded from declining coverage to ZVI as an additional insured.  Regarding the Policy, ZVI asserts that the "additional insured" provision therein includes, as an insured, anyone H. Carr agreed to provide with insurance coverage "because of a written contract or agreement or

---

[10]
As an "additional insured," ZVI seeks to recover the $1,500,000 paid on its behalf by Travelers to settle Siden's claim, plus $259,991.50 incurred in attorneys fees and expenses related thereto.

permit", provided the "written contract or agreement [was] executed . . . prior to the "bodily injury...". Although ZVI agrees that the AIA form ZVI submitted to H. Carr was never signed, it maintains that (1) the Policy does not require a signed or written agreement to provide coverage to an "additional insured;" and (2) by H. Carr's performance of the work and ZVI's payment rendered therefor, the agreement between the parties had been "executed" prior to Siden's accident.

The Hartford responds that "[t]he context in which Mr. Georges testified made it abundantly clear that the term 'executed,' as that term is used in the [Policy], is synonymous with 'signed.'" The Hartford's Opp. Mem. to ZVI's Motion 1. Therefore, The Hartford rejects ZVI's interpretation that "the term 'executed' should mean 'performed' in this particular instance." Id. The Hartford suggests that, if "executed" were to be deemed identical to "performed," Siden's accident occurred before the contract was "executed" or "performed" because H. Carr's work had not yet been completed at that time. Id. at 1-2.

Further, The Hartford states that ZVI has failed to assert any damages in this case because (1) Travelers paid $1,500,000 to settle Siden's claim based on its consideration of ZVI's negligence; and (2) there is no evidence before the Court regarding

the origin[11] and/or reasonableness of the $259,991 in attorneys fees for which ZVI seeks reimbursement.  Id. at 1-2.

H. Carr, also in opposition to ZVI's motion for summary judgment, asserts that "the undisputed facts demonstrate that H. Carr did not agree to procure insurance coverage for ZVI, as it never agreed to ZVI's proposed contract form that would have established such an obligation."  H. Carr. Opp. Mem. 1. With respect to H. Carr's procurement of the Certificate prior to receiving payment from ZVI, H. Carr maintains that "[s]uch evidence . . . does not demonstrate that H. Carr agreed to obtain liability insurance for ZVI."  Id. at 2.  Instead, H. Carr suggests that "[a]n H. Carr employee (who was uninvolved with the contract negotiations and unaware of the proposed contract's alleged requirements) simply forwarded ZVI's request for a certificate to its insurance broker for handling - as a ministerial task in order to receive payment for work that H. Carr had already performed." Id.  Like The Hartford, H. Carr takes the position that ZVI has failed to demonstrate damages.

In response to both objections, ZVI (1) rejects The Hartford's suggestion that "executed" is synonymous with "completed;" (2)

---

[11]

Specifically, The Hartford states that it is unclear whether the requested attorneys fees "were incurred in defending the Siden case, as opposed to the Anderson claim."  Hartford Opp. Mem. at 2. From ZVI's demand for contractual indemnification from H. Carr and The Hartford, it appears that, in addition to Siden, two other individuals were also hurt when the scaffolding collapsed. One of them is identified as Ernest Anderson.  (Document 40-3 at 2).

maintains that H. Carr's efforts to obtain the Certificate upon ZVI's request amounts to an agreement to procure coverage for ZVI as an "additional insured;" and (3) contends that "a genuine issue of fact exists with respect to 'the matter of proof as it relates to [ZVI's] damages.'" ZVI Reply 2-6. Regarding the reasonableness of ZVI's claimed attorneys fees, ZVI offers a declaration by its counsel that ZVI made available 10 boxes of documents generated by the law firm that defended ZVI in the Siden litigation. According to ZVI's counsel, Hartford did not inspect the files. Decl. of Anthony Zelle.

B.   The Hartford's Motion

According to The Hartford, in order for ZVI to be covered under the Policy as an "additional insured," H. Carr had to agree "because of a written contract or agreement or permit," to provide such insurance. Policy Subsection 9(a); Hartford Mem. 4. The Hartford rejects ZVI's contention that "written" only applies to "contract" and that a non-written agreement is sufficient to impose an obligation on H. Carr to provide insurance to ZVI. The Hartford also suggests that the term "executed" in Policy Subsection 9(b), (which provides coverage of the "additional insured" only when "the written contract or agreement has been executed . . . prior to the 'bodily injury") cannot be interpreted as completion of the work undertaken. The Hartford argues that such an interpretation would preclude any additional coverage "because a bodily injury would,

obviously, occur during the course of the work undertaken and not after its completion."  The Hartford Mem. 5.

Finally, The Hartford suggests that, even if ZVI is deemed an additional insured under the Policy, ZVI is not entitled to indemnification or defense with respect to Siden's claim.  Id. 5. The Hartford points out that, in his complaint, Siden alleges that ZVI was negligent in "supervising, failing to supervise or improperly supervising various subcontractors and/or trade contractors and failing to provide a safe work site."  Siden Complaint ¶¶ 31, 32.  Coverage for an "additional insured" under Section 9 of the Policy, however, is "only with respect to your [H. Carr's] operations, 'your work' or facilities owned or used by you."  Based on that language, The Hartford concludes, relying primarily on A.F. Lusi Constr. Inc. v. Peerless Ins. Co., 847 A.2d 254 (R.I. 2004), that Section 9 precludes coverage for ZVI's own negligence, to which the allegations in Siden's complaint are limited.  Id. at 6-8. In other words, Section 9 only provides protection against H. Carr's negligence, it does not provide a basis for vicarious liability arising from ZVI's negligence.

ZVI, in opposing The Hartford's motion, maintains that (1) notwithstanding the absence of a written contract, H. Carr agreed to obtain insurance for the benefit of ZVI "because of ZVI's agreement to hire H. Carr on the IMAX Project," ZVI Mem. Opp. 2-5; and (2) because Siden's claims "relate to" and "involve" H. Carr's

work, they are covered as claims "with respect to" H. Carr's work. Id. at 5-12. Regarding the second issue, ZVI argues that several courts (from jurisdictions other than Rhode Island) have given the term "with respect to" a broader meaning which provides a basis for coverage of the "additional insured's" own negligence. Id.

C. H. Carr's Motion

H. Carr argues that, because it never agreed to ZVI's proposed AIA form contract, ZVI cannot prove that H. Carr ever agreed to procure insurance for ZVI. H. Carr. Mem. 1. H. Carr states that it "specifically refused to bind itself to the AIA Form and its accompanying obligation to procure insurance for ZVI," id. at 7, and that H. Carr "started working on the Project pursuant to the agreement reached on October 28," id. at 8. In other words, H. Carr takes the position that it had a contract with ZVI "because the work had already started and the parties had an agreed-upon amount, scope of work and price," but that the terms in the AIA form were not part of any agreement between the parties. Id. at 10.

Further, H. Carr argues that, if it had procured such insurance for ZVI, such insurance would not have provided coverage for ZVI's own negligence, which provided the basis for Siden's claim. H. Carr Mem. 1-2. Specifically, H. Carr asserts that (1) the AIA Form did not require H. Carr to procure insurance coverage for ZVI's own negligence; and (2) the "additional insured" provision in the Policy did not include coverage for ZVI's own

negligence.  Id. at 17.  With respect to the second issue, H. Carr points to the statutory prohibition, as a matter of public policy, against any agreement "in which a party seeks indemnification from another for the consequences of its own or its agent's negligence." Id. at 18 (quoting Cosentino v. A.F. Lusi Constr. Co., Inc., 485 A.2d 105, 107 (R.I. 1984); citing R.I. Gen. Laws § 6-34-1).

ZVI, on its part, states unequivocally that it "does not contend that H. Carr was bound to obtain insurance for its benefit by the AIA Subcontract."  ZVI Mem. Opp. 2.  Instead, ZVI proposes that H. Carr accepted procurement of liability insurance protection as a "condition precedent" to receiving payment for work H. Carr had already performed on the IMAX project.  Id. at 2-4.  Because H. Carr, upon demand by ZVI, provided proof of the requested insurance coverage by obtaining the Certificate from Willis, "H. Carr agreed to add ZVI as an additional insured."  Id. at 4.  ZVI explains that, "[t]here is no indemnification claim by ZVI against H. Carr in this case.  Rather, ZVI's primary claim is that it is entitled to insurance coverage under the Hartford insurance policy as an additional insured."  Id. at 7.  In the event it is determined that the Policy does not provide coverage to ZVI in this matter, ZVI proposes that "H. Carr is liable in contract to ZVI because it failed to obtain the agreed-upon insurance coverage for ZVI."  Id.

H. Carr takes the position that the obligation to procure insurance coverage for ZVI constitutes a modification of contract without consideration,  H. Carr Reply 2, and that H. Carr's conduct

after receiving the fax requesting the Certificate did not create a binding contractual obligation.  Id. at 3.  Primarily, however, H. Carr maintains that, even if it had incurred an obligation to include ZVI on the Policy as an "additional insured," it was not obligated to procure insurance to cover ZVI's own negligence.  Id. at 5.

D. Willis's Motion

Willis takes the position that (1) H. Carr "expressly directed Willis to issue the certificate so Carr could be paid;" (2) "Willis relied upon information supplied by Carr concerning the required certificate;" and (3) Carr's third-party complaint is time-barred. Willis Mem. 2.  According to Willis, it issued the Certificate with the understanding that H. Carr had agreed to provide insurance for ZVI under the Policy.  Subsequently, The Hartford rejected ZVI's claim for insurance on the ground that no written agreement existed between H. Carr and ZVI.  Id. at 4.

H. Carr, in opposition to Willis's motion, asserts "that there are genuine disputes as to material facts."  H. Carr. Mem. Opp. 1. H. Carr rejects Willis' contention that H. Carr's claims against it are time-barred and maintains that Willis is liable to H. Carr for breach of contract.  H. Carr also points out that its claims against Willis are contingent upon the success of ZVI's claims against H. Carr, id. at 1-2 and that, upon success of H. Carr's motion to dismiss the complaint, H. Carr's claims against Willis become moot.  Id. at 2.

## IV.  Discussion

### A.  Principles of Policy Interpretation

To determine whether, and to what extent, a plaintiff is covered by an insurance policy, the Court is required to perform "judicial construction of the policy language as a matter of law." Mallane v. Holyoke Mutual Ins. Co., 658 A.2d 18, 20 (R.I. 1995). "It is well settled under Rhode Island law[12] that when the terms of an insurance policy are found to be clear and unambiguous, judicial construction is at an end." Amica Mut. Ins. v. Streicker, 583 A.2d 550, 551 (R.I. 1990).  In the absence of an ambiguity in the policy, "[t]he contract terms must be applied as written and the parties bound by them." Id.  To determine whether an ambiguity exists, the Court reads the insurance policy in its entirety, giving words their "plain, ordinary, and usual meaning."  West v. Commercial Ins. Co. of Newark, 528 A.2d 339, 341 (R.I. 1987). Absent a finding that the language is ambiguous, the Court "will not depart from the literal language of the policy." Medeiros v.

---

[12]

Jurisdiction in this case is based on diversity; therefore, a determination of the parties' rights under the Policy, which was apparently entered and intended to be performed in Rhode Island, involves the application of Rhode Island choice of law doctrines. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).  The parties do not address this issue in their memoranda; however, they cite to Rhode Island case law in support of their respective positions.  See Bird v. Centennial Ins. Co., 11 F.3d 228, 231 n.5 (1st Cir. 1993)(foregoing independent analysis of choice-of-law issue where parties agreed on which law governed their dispute and where there was "at least a 'reasonable relation' between the dispute and the forum whose law has been selected by the parties.").

<u>Anthem Cas. Ins. Group</u>, 796 A.2d 1078, 1080 (R.I. 2002)(citing <u>Aetna Cas. & Surety Co. v. Sullivan</u>, 633 A.2d 684, 686 (R.I. 1993)). However, "[i]n situations in which ambiguity does exist in an insurance policy or the terms are subject to more than one reasonable interpretation, the contract will be strictly construed against the insurer." <u>Amica Mut. Ins. v. Streicker</u>, 583 A.2d at 552 (listing cases); <u>Merrimack Mut. Fire Ins. Co. v. Dufault</u>, 958 A.2d 620, 625 (R.I. 2008)("[I]f an ambiguity is found in the insurance contract, the policy must be construed strictly against the insurer.").

B. The Policy

Section II ¶ 9. a. of the Commercial General Liability Endorsement to the Policy provides, in pertinent part:

> Who Is An Insured is amended to include as an insured any person or organization <u>with whom you agreed because of a written contract or agreement or permit</u>, to provide insurance such as is afforded under this policy, <u>but only with respect to your operations, "your work" or facilities owned or used by you</u>. Policy Endorsement Page 3 of 7 (emphases added).

"Your work" is defined as:

> a. Work or operations performed by you or on your behalf; and
> b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

> a. Warranties or representations made at any time with respect to the fitness quality, durability, performance or use of "your work"; and
> b. The providing of or failure to provide warnings or instructions. Policy Section V ¶ 21, Page 13 of 13.

25

The Policy further states:

Provision 9 does not apply: (1) Unless the written contract or agreement has been executed or permit has been issued prior to the "bodily injury","property damage" or "personal and advertising injury." Policy Section II ¶ 9. b.(1) , Page 3 of 7.

C.  Employer Immunity under Worker's Compensation Act

Generally, under Rhode Island law, an injured employee is precluded from filing a personal injury action against his employer if he has collected workers compensation benefits. <u>See</u> R.I. Gen. Laws § 28-29-20. [13]  Likewise, an employer who has provided such benefits to its employee is protected against related third party indemnity or contribution claims, even if it appears that the employer was negligent. <u>A and B Constr., Inc, v. Atlas Roofing and Skylight Co.</u>, 867 F.Supp. 100, 106 (D.R.I. 1994)("[E]mployer who has paid workers' compensation benefits cannot be sued as a joint tortfeasor for contribution by a third party even where its concurring negligence has contributed to an employee's injury.");

---

[13]
Section 28-29-20 provides:
**Rights in lieu of other rights and remedies**
    The right to compensation for an injury under chapters 29--38 of this title, and the remedy for an injury granted by those chapters, shall be in lieu of all rights and remedies as to that injury now existing, either at common law or otherwise against an employer, or its directors, officers, agents, or employees; and those rights and remedies shall not accrue to employees entitled to compensation under those chapters while they are in effect, except as otherwise provided in §§ 28-36-10 and 28-36-15.

see Rushworth v. Manitowoc Eng'g Co., 2008 WL 5048208 *1 (D.R.I. Nov. 25, 2008).

Notwithstanding an employer's immunity against such third party claims, an employer may be contractually obligated to provide indemnification or contribution related to its employee's personal injury claims. Cosentino v A.F. Lusi Constr. Co., Inc., 485 A.2d at 108. "[A] third-party action for contract indemnification from the employer is not an action based upon the employee's injury but rather is an action for reimbursement based upon an expressed contractual obligation between the employer and a third-party plaintiff." Id. (listing cases). However, "a general contractor can obtain indemnification from a negligent subcontractor only if the contract so provides." Cosimini v. Atkinson-Kiewit Joint Venture, 877 F.Supp. 68, (D.R.I. 1995)(holding that parties can create the right to indemnification by contract).

In addition, the Rhode Island Supreme Court has upheld "exculpatory-indemnification clauses that negate liability for an individual's own negligence if the clause is sufficiently specific." Rhode Island Hosp. Trust Nat'l Bank v. Dudley Serv. Corp., 605 A.2d 1325, 1327 (R.I. 1992). Accordingly, "[a] contract will not be construed to indemnify the indemnitee against losses resulting from his or her own negligent acts unless the parties' intention to hold harmless is clearly and unequivocally expressed in the contract." Id.; Di Lonardo v. Gilbane Bldg. Co., 334 A.2d 422 (R.I. 1975)(holding that exculpatory-indemnification contract

shifted the liability of purchasing insurance coverage to the subcontractor).

This Court has previously recognized that "[t]he principle of statutory immunity embodied in the workers' compensation scheme is equally applicable to indemnity, contribution and insurance procurement clauses." Cosimini v. Atkinson-Kiewit Joint Venture, 877 F.Supp. at 72; Fowler v. Boise Cascade Corp., 948 F.2d 49, 55 (1st Cir. 1991)("[A]lthough there is a distinction between procurement, indemnity, and contribution clauses, the principle of statutory immunity embodied in the Workers' Compensation Act is equally applicable to these separate insurance provisions."). Therefore, to the extent that Rhode Island law requires that indemnity provisions are to be strictly construed if they are claimed to waive an employer's immunity or to indemnify a party against that party's own negligence, such principles of construction are applicable to insurance procurement clauses as well.

As the First Circuit has explained, "[t]he purpose of an insurance procurement clause is to contractually allocate the burden of potential loss to one of the contracting parties." Fowler v. Boise Cascade Corp., 948 F.2d at 55 (holding that, in absence of specific provision in procurement clause stating that employer intended to waive its statutory immunity from suit by one of its employees, employer was not responsible for third party's

own negligence). [14]

D.  This Case

The undisputed facts of this litigation reveal that the case is far less complicated than has been presented by the parties and that the dispute is primarily the result of casual business practices. ZVI engaged H. Carr to perform certain work on the IMAX Project, for which ZVI served as the general contractor. It is undisputed that the parties did not enter a written subcontract, nor did ZVI require proof of <u>any</u> type of insurance coverage before it allowed H. Carr access to the Project site. Nevertheless, both parties agree that there was a binding contract between them, pursuant to which H. Carr would perform the specified work, and ZVI would pay to H. Carr the amount of $720,000. H. Carr proceeded accordingly and began to perform work on the Project. Once H. Carr submitted an initial demand to be paid for work it had already performed, ZVI quickly forwarded a modified AIA form to H. Carr for signature. The modified AIA form required H. Carr to add ZVI and the owner of the project as "primary additional insureds." Although the AIA form specified the amount of insurance coverage required, it did not, explicitly or impliedly, require H. Carr to

---

[14]

Although <u>Fowler</u> was based on Maine law, the Court notes that, like Maine, Rhode Island requires strict construction of provisions that purport to impose liability on an employer for a third party's own negligence.

29

purchase insurance to cover ZVI's own negligence.[15]

In addition to requesting H. Carr to sign the AIA form, ZVI faxed a request to H. Carr for proof of insurance, together with a section from an unidentified document that relates to "Tenant's Insurance Coverage During Construction," and a partially filled in insurance certificate form. Neither the faxed communication, the purported back-up document, nor the certificate form explicitly request insurance coverage for ZVI's own negligence.

H. Carr, eager to receive payment from ZVI, and without verifying or disputing that it was obligated to procure such coverage, simply forwarded the request to Willis, its insurance broker. Willis, apparently also without verifying that H. Carr was, indeed, obligated to include ZVI on its Policy pursuant to a "written contract or agreement or permit," issued the Certificate as proof that "ZVI Construction, the Landlord and the Landlord's Constrcution [sic] Manager" were included as "Additional Insured" under the Policy. Apparently satisfied with H. Carr's production of the Certificate, ZVI rendered payment for the work performed and H. Carr continued to work on the Project without ever signing the proposed AIA form.

---

[15] The modified AIA form also states that "Subcontractors are restricted from working on-site until a valid original Certificate of Insurance is received." Policy ¶ 31.1. It is undisputed that no such restriction was enforced and that H. Carr commenced work on the Project before ever being presented with the AIA form or a request for a certificate of insurance.

After H. Carr's employee Siden was injured on the Project, he filed claims against ZVI and various other parties. Under Rhode Island law, Siden was precluded from filing a claim against his employer because Siden collected workers' compensation in connection with the accident. Eventually, ZVI reached a settlement with Siden pursuant to which ZVI's insurer paid $1,500,000 for ZVI's share in the negligent conduct. As ZVI concedes, that payment was entirely attributable to negligence by ZVI, not by H. Carr. ZVI and/or its insurer now seek to recover this amount from H. Carr and/or its insurer on the theory that (1) ZVI was covered as an additional insured under H. Carr's policy with The Hartford;[16] or, if that is determined not to be the case, (2) H. Carr breached its contractual obligations to procure insurance coverage for ZVI.

H. Carr, initiating suit almost ten years after commencement of the underlying personal injury litigation, seeks to protect itself against ZVI's claims by pointing the finger at its insurance broker, Willis. It is undisputed that Willis, apparently in taking an unrelated document submitted to it by H. Carr at face value, issued the Certificate without verifying whether H. Carr was contractually obligated to procure such insurance for ZVI.

On its part, The Hartford relies on the language in the Policy, which affords coverage to an additional insured only

---

[16]

The Travelers, apparently taking a page from ZVI's book, supported its initial demand for contractual indemnification by presenting a copy of the unsigned AIA form to The Hartford.

"because of a written contract or agreement or permit . . . but only with respect to your operations, 'your work' or facilities owned or used by you."  Policy Page 3 of 7.

E.   Coverage as an "Additional Insured" under the Policy

In order to prevail on its claim against the Hartford, ZVI must show that (1) H. Carr agreed to procure insurance coverage to ZVI "because of a written contract or agreement or permit. . . such as is afforded under this policy;" <u>and</u> (2) qualifying as an "additional insured" under the Policy affords insurance coverage to ZVI for its own negligence.  Even if it is assumed that ZVI can meet the first requirement, construction of the Policy language at issue under Rhode Island law precludes ZVI from meeting the second requirement.

The Policy provides coverage to an additional insured "only with respect to your [referring to the primary policy holder] operations, 'your work' or facilities owned or used by you." Policy Endorsement Section 9. a., Page 3 of 7.  As this Court has previously recognized, although other jurisdictions have interpreted such language to include coverage for an additional insured's own negligence, the Rhode Island Supreme Court adopted a decidedly narrower construction in <u>A. F. Lusi Constr., Inc. v. Peerless Ins. Co.</u>, 847 A.2d at 263-265.  <u>See</u> <u>MacArthur v. O'Connor Corp.</u>, 635 F.Supp.2d 112, 117 (D.R.I. 2009)(noting that the Rhode Island Supreme Court determined that an additional insured provision similar to the one in the instant case "did not cover a

general contractor for its own negligence.")

Similar to the case before this Court, the general contractor ("Lusi") in A.F. Lusi brought a declaratory judgment action against its subcontractor's ("Pasquazzi") insurer ("Peerless"), asserting that the subcontractor had breached its contractual duty to secure insurance for the general contractor and to provide it with a defense in a personal injury claim brought by the subcontractor's employee. A. F. Lusi Constr., Inc. v. Peerless Ins. Co., 847 A.2d at 256-257. The injured employee collected workers compensation benefits; consequently, his complaint was limited to assertion of negligence against Lusi. Unlike in the instant case, Lusi and Pasquazzi had a signed subcontract agreement. However, the Rhode Island Supreme Court determined that "the relevant contract language does not evidence a clear intent by Peerless and Pasquazzi to designate Lusi as an additional insured under the terms of the Peerless insurance policy - at least not with respect to claims alleging that Lusi's negligence caused an employee of Pasquazzi to suffer personal injuries while working at the job site." A.F. Lusi, 847 A.2d at 258. Likewise, the Court rejected Lusi's suggestion that the insurance certificate provided such coverage. Id. at 259.

Pasquazzi's CGL policy contained two prerequisites for designating Lusi as an "additional insured," which are identical to those in the Policy issued by The Hartford to H. Carr. First, the insurance Peerless agreed to provide to Pasquazzi "was limited by

that policy's terms to include as additional insured only 'any person or organization with whom [Pasquazzi] agreed, because of a written contract or agreement or permit, to provide insurance such as is afforded under the policy." Second, an additional insured was covered *only with respect to your [Pasquazzi's] operations, 'your work' or facilities owned or used by you."* Id. at 259.

With respect to the first prerequisite, the Court determined that Lusi had failed to procure such an agreement from Pasquazzi. Id. at 259-263. With respect to the second prerequisite, the Court stated that, given the restricted language of the "additional insured" provision, "even if the Peerless insurance policy covered Lusi as an additional insured, it does not appear to us that Peerless agreed to indemnify or defend Lusi in connection with claims asserting Lusi's own negligence." Id. at 264. In arriving at this conclusion, the Court surveyed a number of cases from other jurisdictions which had put a broader construction on similar "additional insured" provisions. Id. (listing cases). The Court noted, however, that those cases "are distinguishable from this one because, for the most part, they interpreted different policy language than the language used in the Peerless policy." Id. Specifically, the provisions which were deemed to provide coverage for an additional insured's own negligence "used the term 'arising out of' or 'arising from' work or operations of the insured." Id. (listing cases). The A. F. Lusi Court rejected the plaintiff's

34

reliance on the cases because the policy at issue used "the more limited language that Peerless insurance will extend to additional insureds 'only with respect to' Pasquazzi's operations, work, or facilities that Pasquazzi owned or used." Id. Regarding two other courts which had interpreted the "with respect to" language as including coverage for the additional insured's own negligence, the A.F. Lusi Court pointed out that those courts "relied upon the reasoning used in the cases involving the language "arising out of" and failed to acknowledge any distinction between the scope of these two different phrases." Id.

Based on the narrow construction in A.F. Lusi of the "additional insured" provision identical to that in this case, this Court is of the opinion that, under Rhode Island law, the Policy provides no coverage to ZVI for ZVI's own negligence. Although ZVI suggests that the Certificate does not explicitly limit coverage to claims involving H. Carr's negligence, the Certificate clearly states that it "confers no rights upon the certificate holder" and does not "alter the coverage afforded by the policies." Therefore, the Certificate cannot serve to broaden the Policy coverage, which, as stated above, does not extend to ZVI's own negligence. In other words, even assuming that ZVI had procured an agreement from H. Carr to provide it with coverage under the Policy, the policy language itself limits coverage to instances of H. Carr's negligence.

F.    Breach of Duty to Procure Insurance

With respect to ZVI's second claim, that H. Carr breached its agreement to procure insurance, the claim fails because ZVI is unable to show how it was damaged thereby.  Assuming, for the sake of argument, that H. Carr's conduct in asking Willis to issue the requested Certificate constitutes an agreement[17] to procure insurance coverage for ZVI as an "additional insured," such agreement falls far short in demonstrating H. Carr's intent to protect ZVI against ZVI's own negligence.  While H. Carr may have agreed to add ZVI to its Policy, there is no evidence that H. Carr intended to waive its immunity to damages for which it was not legally responsible. Any insurance that H. Carr would have been able to procure for ZVI as an "additional insured" under the Policy (as requested by ZVI) would only have provided protection to ZVI "with respect to [H. Carr's] operations, '[H. Carr's] work' or facilities owned or used by [H. Carr]."   Under the narrow interpretation that Rhode Island law has imposed on such language in an insurance policy, ZVI would not have been covered for any damage it incurred as a result of its own negligence, to which its

_____

[17]

H. Carr suggests that its conduct amounted, at most, to a modification of contract for which no additional consideration was received, as H. Carr had already performed the work for which it sought payment.   However, given the lack of specified terms regarding the parties' performance, it is clear that, while H. Carr was entitled to payment for its work, nothing obligated ZVI to pay H. Carr <u>at that particular time</u>.   Therefore, an immediate interim payment for H. Carr's work could well be construed to serve as additional consideration.

claims in this litigation are limited, _i.e._ the settlement payment to Siden for ZVI's negligence. Because Siden was precluded from bringing suit against H. Carr, which had provided him with workers compensation benefits, nothing in the underlying personal injury complaint addressed any negligence by H. Carr. Therefore, even if H. Carr were successful in obtaining coverage for ZVI as an "additional insured" under the Policy, ZVI would not be eligible to collect thereunder.

G. Third Party Complaint

Because this Court has determined that (1) H. Carr was not obligated to obtain insurance coverage to protect ZVI against its own negligence; and (2) coverage under the Policy, if any, is limited to injuries that arose because of negligence on H. Carr's part, there is no need to discuss the cross motions asserted by Willis and H. Carr with respect to the third-party complaint because they have been rendered moot.

**V. Conclusion**

For the reasons stated herein, with respect to ZVI's complaint, ZVI's motion for summary judgment is DENIED; The Hartford's motion for summary judgment is GRANTED; and H. Carr's motion for summary judgment is GRANTED. Further, for the reasons stated herein, Willis's motion for summary judgment is DENIED

because it is moot.

SO ORDERED.

<u>/s/ Mary M. Lisi</u>

Mary M. Lisi

Chief United States District Judge

July 18, 2011